UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-CR-80148

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DONALD PLATTEN,

        Defendant.
_____/

**AMENDED OPPOSED MOTION FOR ADMINISTRATIVELY EXHAUSTED PRAYER FOR COMPASSIONATE RELEASE AND CERTIFICATE OF CONFERENCE.**

**A. Summary of prayer for release.**

Platten committed serious frauds. His procedural history shows that he fought his charges and made the serious mistake of going forward to trial rather than just admit his guilt and enter a guilty plea. Platten serially appealed and challenged his conviction. He knows he earned himself the functional equivalent of a life sentence. After conviction, Platten knew there was a different path he should have taken. After conviction, with the approval of his prosecutor, Platten did make an effort to show remorse, repentance and contrition and cooperation.

Now 69 years old, suffering from cancer and coronary problems, after more than 10 years and 8 months of real jail time and after service of more than 12 years in jail with good time credits, this convicted fraudster prays for compassionate release.

Serving more than a decade imprisonment, suffering from heart disease, after open heart surgery with three stents placed while imprisoned, after prostate cancer

that traveled to his hips, after receiving a lifetime urethra catheter, after unsuccessful prison surgery, and now living with a "bag," Platten prays for compassionate release.

Should this Honorable Court choose to exercise its jurisdiction and allow Platten to be released from jail, no reasonable observer can say that he did not pay a very serious price for his very serious crimes

### B. Platten suffers from medical conditions that merit consideration for compassionate release.

#### 1. Cancer.

Platten suffers from prostate cancer which has spread to his hip. Because of the prison COVID-19 lockdown, he has not been able to get a PET scan to better assess his condition. No outside medical trips are being conducted. In 2019, Platten had unsuccessful surgery to unblock his urethra canal. A super pubic catheter was installed, along with a bag, for the removal of urine from the bladder. Doctors advise Platten this will be a life-long condition. Platten receives a dosage of Lupron every 3 months. Lupron treats the symptoms of prostate cancer but does not treat the cancer itself. Lupron side effects include increase of bone pain, swelling of the prostate that blocks urine flow, or swelling around the tumor. Also, Lupron dispensing may result in additional heart problems such as congestive heart failure or problems with blood clots. Blood clots can lead to pulmonary embolism or stroke- potentially life-threatening conditions. Platten also has a heart disease.

#### 2. Heart Condition.

Platten had triple by-pass heart surgery. While jailed, Platten recently had two stents placed in his heart. Because of his heart disease, the Defendant is at a greater risk developing complications if he suffers from COVID-19. Doctors have recently

reported a high impact of the coronavirus on the coronary system, rendering Platten far more susceptible to death, should he contract that disease.

### 3. Diabetes.

Platten just learned that he also suffers from diabetes. Diabetics who contract COVID-19 are far more likely to die from the infection.

### 4. Platten is currently dispensed the following medications:

Sulfame moxazole/trimeth 800 mg

Tamsulosin HCl .04 mg;

Omeprazole 20 m

Atorvastatin 20 mg

Hydrochlorothiazide 12.5 mg., diuretic

Lupron

## C. Chronology of Criminal Proceedings

Donald Platten was indicted in 2008 and charged with one count of conspiracy to commit securities fraud (18 U.S.C. 371), fourteen counts of securities fraud (15 U.S.C. 78j(b) & 78ff(a)), one count of conspiracy to commit wire fraud (18 U.S.C. 371), and one count of corruptly endeavoring to impede the Internal Revenue Service (26 U.S.C. 7212(a)). Platten went to trial, and a jury acquitted him of 8 of the 14 securities-fraud counts and convicted him of the remaining charges; he was sentenced to a total of 262 months' imprisonment. He unsuccessfully appealed and collaterally attached both his convictions and his sentence.

Briefly stated, Platten was a South Florida businessman who appropriated substantial sums of money from his publicly traded corporation by causing it to issue stock

to his personal creditors and nominees, purportedly as payment of corporate debt that did not, in fact, exist. Platten did not challenge the sufficiency of the evidence supporting the counts on which he was convicted.

This Court imposed a 262 month sentence in February of 2009 and thus far Platten served 124 months of his jail term, along with an approximate additional 24 months of good time. Thus far, Platten, 69 years old, served 148 months of his 262 month jail term.

### D. Jurisdiction

In December 2018, Congress vested this Court with the power to consider reducing a limited number of its previous sentences where extraordinary circumstances, not foreseen at the time of sentencing, make such reconsiderations appropriate. Now, Section 3582(c)(1)(A) of Title 18 permits a defendant to file directly with the Court a motion seeking reduction of his or her sentence for extraordinary and compelling reasons if: (1) the defendant has fully exhausted his administrative remedies; or (2) there has been a lapse of 30 days from the warden's receipt of the defendant's request, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A)(i). No longer is the Court divested of jurisdiction after sentencing a defendant. Upon the proper showing and in light of extraordinary circumstances this Court is permitted to release an inmate.

We respectfully ask this Court to consider the release of the Defendant from custody and to permit him to serve strict home detention including perhaps, home confinement.1 The Defendant is 69 years old, has a compromised coronary, prostate

---

1 Many district courts have recently exercised their expanded jurisdiction to release the convicted in light of the pandemic and unrelated medical issues. *See U.S. v. Foster*, No. 1:14-cr-324-02 (MD Pa. Apr. 3, 2020) ("the circumstances faced by our prison system during this highly contagious, potentially fatal global pandemic re unprecedented. It is no stretch to call this environment 'extraordinary and compelling'

4

cancer that traveled to his hips, and problems that affect his immune system. Most importantly today, this Defendant, like every person in this country, is in danger of contracting a pernicious, aggressive life-threatening infection.

### E. Conditions of Confinement.

Unlike most people in this country, this Defendant has no way to practice the social distancing and sheltered protective measures that are mandated by governments and health officials. The Defendant is effectively prevented from such practices, as well as from obtaining outside needed medical attention, due to the conditions of incarceration. The jail is in lockdown.

The Defendant lives in a dorm style room with 175 inmates with two men bunks beds. The men are about 30 inches away from each other on both sides. The jail has many confirmed cases that afflict staff and inmates. The disease increases exponentially, to be distinguished from other mathematics.

All inmates eat together and shower in all the same places. Now due to the lockdown they cannot go outside for fresh air. There is no testing available to inmates before the symptoms make clear the disease has stricken.

---

and we believe that should we not reduce defendant's sentence, defendant has a high likelihood of contracting COVID-19 form which he would "not be expected to 'recover." USSG sect 1B1 .13. No rationale is more compelling or extraordinary/"); *U.S. v. Resnik*, No. 1:12-cr-00152- CM (SDNY Apr. 2, 2020)("Releasing a prisoner who is for all practical purposes deserving of compassionate release during normal times is all but mandated in the age of COVID-19."); *U.S. v. Williams*, No. 3:04-cr-95 (MCR)(ND Fla. Apr. 1, 2020)("Williams health conditions taken with his age put him at significant risk for even more severe and life threatening illness: should he be exposed to COVID-19 while incarcerated; See *U.S. v. Colvin*, No. 3:19-cr-179 (JBA), 2020 WL 1613943 (D.Conn. Apr. 2, 2020)("she has diabetes, a serious medical condition, which substantially increases her risk of severe illness is she contracts COVID-19. Defendant is unable to provide self-care within the environment of FDC Philadelphia in light of the ongoing and growing COVID-19 pandemic because she is unable to practice effective social distancing and hygiene to minimize her risk to exposure. The Court concludes that the risk faced by defendant will be minimized by her immediate release to home, where she will quarantine herself.").

The Defendant committed serious crimes leading to his incarcerations, but the unforeseen health problems now threaten his life. Addressing and alleviating the risk of such dangers are both prudent and compassionate without endangering others or deviating unreasonably from the intent and purpose of the Court's original sentences for them.

It is becoming clear that the BOP's facilities and staff are soon facing a tidal wave of infections because the BOP houses a large number of prisoners in very tight quarters across this nation. Once the virus spreads inside BOP facilities, there will be little to stop it. BOP has decided as a policy matter to battle this virus by treating the prisons as fortifications that will nominally deny entry to outside infestation by among other things, ending inmate visitation and requiring the Staff to self-report infections. *See* https://www.bop.gov/coronavirus/covid19_status.jsp.

While the BOP's strategy certainly is well intentioned, it flies in the face of every health expert and governmental order in the country. Indeed, on Sunday, March 22, the President of the United States discussed openly that he is considering releasing all federal prisoners who are elderly and non-violent, presumably based on recommendations received by his Coronavirus Task Force. *See* https://www.businessinsider.com/trump-consider-coronavirus-executive-order-federal-prisons2020-3. BOP's "Impenetrable Fortress" strategy is not going to work. Staff, both symptomatic and non-symptomatic has contracted the virus and unintentionally introduces that virus within the inmate population.

In March 2020, the Warden at the Fort Dix FCI denied Platten's administrative remedy request for release. That denial, in this Circuit, is a jurisdictional predicate to the filing of this judicial prayer for relief, and this truly is a prayer for relief.

F. **Pandemic within the jails.**

BOP-Reported Positive Tests for COVID-19 Nationwide

| Date | Number of Positive Inmates | Number of Positive Staff | Number of Inmate Deaths |
|---|---|---|---|
| 4/1/2020 | 57 | 37 | 3 |
| 4/2/2020 | 75 | 39 | 6 |
| 4/3/2020 | 91 | 50 | 7 |
| 4/4/2020 | 120 | 54 | 8 |
| 4/5/2020 | 138 | 59 | 8 |
| 4/6/2020 | 195 | 63 | 8 |
| 4/7/2020 | 241 | 72 | 8 |
| 4/8/2020 | 272 | 105 | 8 |
| 4/9/2020 | 283 | 125 | 8 |
| 4/10/2020 | 318 | 163 | 9 |
| 4/11/2020 | 335 | 185 | 9 |
| 4/12/2020 | 352 | 189 | 10 |
| 4/13/2020 | 388 | 201 | 13 |
| 4/14/2020 | 444 | 248 | 14 |

G. **The Pandemic.**

COVID-19 kills the sick and elderly at heartbreaking rates. Since January 2020, COVID-19 has spread widely in the United States. It is detected in all 50 states, the District of Columbia, Puerto Rico, Guam, and the U.S. Virgin Islands. *See* CDC, COVID-19 Cases in the US, available at https://www.cdc.gov/coronavirus/2_019-ncov/cases-updates/cases-in-us.html.

COVID-19's death rate goes up 1) the older you are and 2) the sicker you are. The death rate increases dramatically with age. The best current evidence is that people aged 10-39 years are roughly 0.2% likely to die from COVID-19 (still a mortality rate double the influenza mortality rate).

Then it starts going up:

| Age | Case Fatality Rate |
|---|---|
| 60-69 years old | 3.6% |
| 70-79 years old | 8% |
| 80+ years old | 14.8% |

COVID-19's comorbidity death rate is frightening.  Across all age groups, COVID-19 kills:

| Condition | Case Fatality Rate |
|---|---|
| Cardiovascular disease | 13.2% |
| Diabetes | 9.2% |
| Hypertension | 8.4% |
| Chronic respiratory disease | 8% |

This information derived from analysis of death in Hubei Province, China.

In Wuhan, of the hospitalized population who ended up dying from COVID-19, 48% of them had hypertension, 31% had diabetes, and 24% had coronary heart disease.  *See* Fei Zhou et al., Clinical course and risk factors for mortality of adult inpatients with COVID-19 in Wuhan, China: a retrospective cohort study, Lancet (Mar. 11, 2020), available at https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(20)30566-3/fulltext.

Given the fact that the Defendant suffers from heart disease, cancer, and diabetes, he faces a substantial likelihood of death in the event he contracts the corona virus.  Rather than wait until he does so, the present facts provide a compelling predicate to request compassionate release.

### H. Release plan if prayer for relief is granted.

If this Court grants Mr. Platten's emergency motion, he will be living with his wife and 12-year-old son in Boca Raton, Florida, where he was living more than a decade ago, prior to commencing his jail term.  Any restrictive conditions may be applied.

### I.   Conclusion, Certificate of Conference, and Exhaustion.

Consistent with Local Rule, the undersigned discussed this motion with the DOJ Trial Attorney Kenneth Vert who took the position that his Department defers to the BOP and the BOP on or about April 14, 2020 declined compassion release.  Consistent with governing law, the BOP is not the final word.  The Defendant knows well that he has no right to release but merely has the opportunity to pray for release.  We thank the Court for its review.

Respectfully submitted,

*/s Neil M. Schuster*
Neil M. Schuster, P.A.
Florida Bar No. 216909
555 N.E. 15th St., Ste. 2C
Miami, FL   33132
Telephone: (305) 416-0324
Facsimile: (305) 416-0325
Email: neil@neilmschuster.com

### CERTIFICATE OF CM/ECF SERVICE

I HEREBY CERTIFY that on    April 17, 2020   , I **DID** present the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system but conveyed a copy via email to AUSA Kenneth Vert.  A notice of electronic filing will be sent to the corresponding parties.

By:  */s Neil M. Schuster*
Neil M. Schuster